Tuckek, P.
This is a scire facias on a recognizance taken before a justice of the peace, and certified to the superiour court of Kanawha. One Hager having been prosecuted before an examining court for passing counterfeit coin, was sent on for further trial; but the court made an order admitting him to bail on his entering into a recognizance, which he accordingly did with the plaintiffs in error as his sureties. The recognizance was drawn out previously to its being acknowledged, and was first read to and acknowledged by the prisoner, after which it was read to and acknowledged by the sureties. After it had been completed, the clerk of the court suggested some defects in it, and expressing also an opinion that it might be amended by the justice, he amended it accordingly by the insertion of several lines. The recognizance as amended was not read over to or reacknowledged by the cognizors, though the two sureties were present when it was done : but the principal was in the lobby of the courthouse about the door, and does not appear to have known of the interlineation or alteration.
As the recognizance was originally drawn, it was general in its terms, binding the party to appear at the superiour court, then and there to do and receive what should be injoined him by the said court. As amended, it bound him to appear then and there, to do and re *646 ceive what should be injoined him by the court on a charge of having feloniously passed counterfeit coin. Now by the statute, and the order of the examining court made under it, the justice of peace had no power to t|ie party in a recognizance to do more than to answer the particular charge. His demanding and taking a recognizance of a more general character was without authority, and therefore void; and had the recognizance been sued upon in its original form, it would have been a good defence to allege that it was taken without authority, and not in the course of any judicial proceeding. The alteration, therefore, in the recognizance was material. It made that good upon its face, which otherwise would have been void. Moreover, as amended, it bound the sureties that Hager should answer to a particular charge, when it does not judicially appear that they knew he was under prosecution for so serious an offence.
Be this as it may; the recognizance having been materially altered, two questions present themselves: 1. Whether it afforded matter of defence to the parties, in any form ? and 2. In what form ought they to seek their remedy ?
It would be a reproach to the jurisprudence of any country, if a material alteration in an obligation however solemn, or even in the records of the court itself, to the prejudice of a party, could be in no wise corrected. In this case the parties entered into' a recognizance, which would have been void if it had remained unaltered. It is changed; it is never reacknowledged by them after the change, and the principal does not even know of the change. It is impossible to consider them as bound by the instrument in its present form. Let us consider the question first upon the supposition— certainly the most favourable to the commonwealth— that the recognizance had become a matter of record, at the time the alteration was made in it. Upon this *647 supposition the authorities are abundant to prove that where a record has been falsified by erasure or interlineation, it may be amended and restored to its original condition. The absolute verity attributed to records cannot be used to give sanction to a forgery or to a fraudulent erasure of the record. Accordingly wo find it decided, as early as the times of Ball (2 Roll’s Rep. 80. 1 Roll’s Abr. 208. 209.) that if any part of a record be vitiated by rasure, the court will restore it by amendment; because the wickedness of any person in corrupting the records of the court ought not to obstruct its justice, or prejudice any of the parties. Thus where it appeared that, in a venire facias, Chumley was rased and made Himly, the record was amended, and restored to its original state. 2 Vin. Abr. 312. 1 Bac. Abr. 225. Amendment. H. So in ejectment upon a lease made May the 10th, this was rased and made the 11th, by which the plaintiff’s judgment was rendered erroneous ; yet as it appeared to the court that it was rased, and altered without lawful authority, it was said it should be amended, though the rasure was felony. Poph. 196. And lord chief justice Gilbert in his Hist. C. B. 146. says, in the language above cited, if any part of the record be vitiated by rasure, the court will restore it by amendment; because the wickedness of any person in corrupting the records of the court ought not to obstruct its justice, or prejudice any of the par-lies. In the case in 2 Roll 80. 81. judgment was rendered against A. and Mary his wife, but the word Mary was erased, as appeared plainly upon view of the record. She was taken in execution, and brought a writ of error in the exchequer chamber, for that no judgment was had against her. It was moved in the court below, that this being an apparent practice to avoid the execution, the record might be amended, and a special entry made that it had been rased, and that the court had amended it; to which the whole court *648 agreed; and then it was said, the court of exchequer chamber (where the writ of error was depending) would amend the transcript also, which had been sent and certified to it before this motion. Here then, I think, is a chart sufficient to steer our course by in this case. First, it is clear that if the recognizance had been altered after it became a record, the court upon motion would restore it to its original and true form. Secondly, it is clearly to be inferred that the correction of the record can only be in the court where the record is. Thirdly, that its verity cannot be assailed incidentally, but must be directly brought in question by motion to correct it. And lastly, that when corrected, the record will in another proceeding be taken in its corrected and not in its falsified form. Thus in the present case, the court (upon the supposition that it was a record) should have stricken out the interlineation, and upon the plea of nul tiel record, would have given judgment for the defendants, for the variance between the record as corrected and that recited in the scire facias.
But the recognizance was not, when altered, a matter of record, though it certainly was so, I presume, at the time of the plea pleaded. Supposing it, however, not a-record at the time of the plea pleaded, the question is, first, whether the defendants can avail themselves of the alteration; and secondly, in what manner. As to the first, it cannot be doubted that if a party can even correct a rasure or fraudulent falsification of a record, he can a fortiori correct an alteration in a recognizance which was not a matter of record when it was altered. It would outrage common sense to say that after a justice of peace had taken a recognizance in the penalty of 100 dollars, his changing the penalty to 10,000 dollars should be without redress. There must be some means of defending himself against such a wrong, afforded by the law to the injured party.
*649 The case of Glynn v. Thorpe, 1 Barn. & Ald. 153. is * /t i a strong case to she .v that a recognizance not oí record may be answered by a plea of nil debet. There, a recognizance in the exchequer chamber was pleaded as a set-off; and the plaintiffs replied in the most general terms, that they were not indebted to the defendant as in that plea alleged. It was objected that instead of this replication of nil debet, the plea should have been “ no such record.” The court decided that, until enrolled, the recognizance was not a record, and that the plea having failed to set forth the enrolment, the replication treating it as no record was good. Here then it appears, a recognizance not of record may be assailed by the most general plea.
According to these views, the judgment of the circuit court of Kanawha was erroneous, whether the recognizance was to be pleaded to as a record or not. My own impression however is, that although the alteration was before the recognizance was matter of record, it can in this action be treated in no other manner than as a record. The scire facias sets it forth as having been transmitted to the superiour court, and as remaining filed among the records thereof. It is therefore now a record, and to the scire facias upon it nul liel record is the proper plea. Its verity cannot be questioned by plea, but by motion or rule; and the defendants very properly obtained a rule for the purpose of correcting the falsification of the recognizance by the interlineation of a material clause. Upon the facts and evidence before the court, the rule should have been made absolute, instead of being discharged, and the amendment should then have been made by striking out the interpolated matter. And as this rule was but ancillary to the case upon the scire facias, that case should have been suspended until the decision of the rule, and then the defence would have been fairly tried upon the plea of nul tiel record. The amended record would have va *650 ried from the scire facias, and so judgment must have been given for the defendants; leaving to the commonwealth to prosecute her scire facias anew upon the amended recognizance, if to her officer it should seem fit.
j am therefore of opinion to reverse the judgment discharging the rule, and the judgment on the scire facias, and to send the cause back with directions to amend the recognizance according to the right of the case, and then to proceed to a new trial of the scire facias upon the defendants’ plea of mil tiel record.
The other judges concurring, judgment reversed and cause remanded to the circuit court.